**BARRON G. COLLIER, Inc., v. B. DEUTSER FURNITURE CO. (No. 949.)**

(Court of Civil Appeals of Texas. Beaumont. Nov. 20, 1923. Rehearing Denied Nov. 28, 1923.)

1. **Damages ⬅62(4)—One injured by breach of contract must use reasonable effort to minimize damage.**

Where advertising space in street cars was contracted for by defendant for five years, but after one year it breached its contract by refusing further payment or to use the space, it was plaintiff's duty to use reasonable efforts and diligence to re-rent such space, to reduce or minimize its damage.

2. **Appeal and error ⬅931(4)—Presumed trial court made finding necessary to support judgment.**

In action for breach of contract for advertising space in street cars, where plaintiff made no request for finding as to whether it had unsold space of its own in such cars other than space covered by the contract, if such finding was necessary to support judgment, it will be presumed, in absence of anything to contrary, that it was made.

3. **Appeal and error ⬅1050(1) — Admitting evidence to same effect as that introduced by appellant, if error, harmless.**

In action for breach of contract for advertising space in street cars, in view of plaintiff's evidence that it could have re-rented or relet the space contracted for by defendant, any error in admitting defendant's evidence that plaintiff could have re-rented such space to other advertisers for as much as it was to receive from defendant was harmless.

4. **Appeal and error ⬅931(6)—On trial before court presumed judge considered proper testimony only.**

Where trial was before the court, it will be presumed that the judge considered only so much of the testimony as was proper to be considered.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by Barron G. Collier, Inc., against the B. Deutser Furniture Company. Judgment for plaintiff in amount less than petitioned for, and it appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, for appellant.

Campbell, Myer & Freeman, of Houston, for appellee.

HIGHTOWER, C. J. The appellant, in its brief, makes the following statement of the nature and result of this suit, which is not objectionable to appellee:

"The appellant, by contracts with the Houston Electric Company and the Galveston-Houston Electric Company, controlled all of the advertising space in the street cars of the first company in Houston and in the interurban cars between Houston and Galveston of the second company. The appellee made four contracts with the appellant, whereby the appellee agreed to take one standard space in all the local Houston cars for 60 months from June 1, 1919, for $79.50 per month, and all fractional space in the local Houston cars, except those occupied at that time by the Cricket Auto Company, for 60 months from July 1, 1919, for $100.50 per month; one standard space in the interurban cars for 60 months from June 1, 1919, at $7 per month, and all fractional space in the interurban cars for 60 months from July 1, 1919, at $10 per month. The appellee having notified the appellant that

it would not take the space after August 1, 1920, the appellant brought suit upon the four contracts for the amount agreed to be paid by the appellee on the contracts.

"The appellee answered, denying the authority of the agent of appellee to make the contracts, by a general denial, and pleaded further that the appellant could have by reasonable efforts re-rented the space covered by the contracts for the same amount as appellee agreed to pay for same. The appellant's supplemental petition pleaded that the appellee was estopped to deny the authority of its agents to make the contracts. The case was tried without a jury on January 3, 1922, and judgment was rendered on January 31, 1922, for the appellant against the appellee for the sum of $289, with accrued interest upon the two contracts covering space in the interurban cars; but the court rendered judgment against the appellant as to the contracts covering space in the local Houston cars."

At the request of appellant, the trial court filed findings of fact and conclusions of law; the findings of fact being as follows:

"I find the facts in this case to be as follows:
"(1) That the four contracts sued upon were duly executed by the defendant.
"(2) That H. P. Riggs, at the time of the execution of the four contracts sued upon herein, was the manager of the Houston retail store of the defendant, B. Duetser Furniture Company.
"(3) That H. P. Riggs had authority to sign and execute on behalf of the defendant, Duetser Furniture Company, the four contracts sued upon.
"(4) That the signing of the four contracts sued upon by H. P. Riggs for the defendant, Deutser Furniture Company, was within the apparent scope of the authority of the said H. P. Riggs as manager of the Houston store and secretary of the company.
"(5) That the plaintiff and its agent relied upon such apparent authority of the said H. P. Riggs in concluding the four contracts sued upon and then proceeding thereunder.
"(6) That the defendant, Duetser Furniture Company, continued to use the advertising space in question for several months after it had notice of their execution.
"(7) That the defendant, Deutser Furniture Company, continued to make payments under the terms of the four contracts sued upon for several months after it had notice of the execution of said contracts.
"(8) That the defendant has paid to plaintiff, as the same accrued, all amounts due as rent for all of the spaces covered by the four contracts declared upon herein up to August 2, 1920.
"(9) That defendant, Deutser Furniture Company, did not object to, or undertake to cancel or repudiate, the contracts herein sued upon until more than 12 months after their execution and the operation of both parties plaintiff and defendant thereunder.
"(10) That on or about August 2, 1920, through notice previously given, defendant breached all of the contracts herein sued upon by refusing to make further payments thereunder or use the advertising space therein call-

ed for, and asked plaintiff to cancel and rescind the contracts in question.
"(11) That plaintiff could at no time after notice of defendant's refusal to carry out its contract, and during the period covered by this suit, by the use of ordinary care and diligence have disposed of the space contracted for in the cars of the Galveston-Houston Electric—that is, the space called for by contract No. 6812 and by contract No. 7330—without giving preference to defendants over plaintiff's business.
"(12) That plaintiff could, after receiving notice of defendant's refusal to carry out its contract, and at any and all times during the period covered by this suit, by the use of ordinary care and diligence have disposed of the space contracted for in the cars of the Houston Electric Company—that is, the space covered by contract No. 6769 and contract No. 6911—at plaintiff's current terms and rates, and at a price at least equivalent to the amounts called for in said contracts, and also in a manner not to interfere with the orderly conduct of plaintiff's business, and without giving defendant's business preference over plaintiff's.
"(13) That the amounts which became due each month as rent under the two interurban contracts should be paid to plaintiff by defendant for all of the time from August 2, 1920, to January 2, 1922, at the rate of $17 per month, the aggregate amount due, principal and interest at date of judgment, on said last two contracts, I find to be $301.28, and that no portion of this amount has been paid by defendant to plaintiff.
"(14) That the plaintiff failed and refused to make any effort to re-rent said space in said four contracts mentioned, or any part thereof, to any one else since receiving notice from defendant of its desire to cancel the same, and since August 2, 1920, but treated same as a closed transaction."

The only conclusions of law made by the court which are necessary to be here shown, were as follows:

"(9) Plaintiff owed to defendant the duty to reduce or wipe out the damages flowing from defendant's breach of contract by reselling the spaces covered by the contracts sued upon, at any time it could have done so by the exercise of reasonable diligence, at such price and upon such terms as would in no way interfere with the then orderly conduct of plaintiff's business, provided that at any such time plaintiff did not have similar unsold space of its own.
"(10) The burden of proof is on the defendant by a preponderance of the evidence to establish or prove a state of facts which under the law would entitle it to have the damages minimized.
"(11) Plaintiff was not bound to cut its regular then existing rates, or to otherwise alter the orderly and regular conduct of its business at any particular time, in order to reduce or wipe out the damages resulting from defendant's wrongful breach of contract.
"(12) Plaintiff is not bound to sell the space contracted for by defendant in preference to its own unsold space of similar character, and its obligation to reduce or wipe out the dam-

ages resulting from defendant's wrongful breach of contract does not arise until and unless it has disposed of all of its own unsold space of similar character."

The trial court's twelfth finding of fact, as shown above, is assailed by proper assignment of error, on the grounds that it has no support in the evidence, and that the overwhelming preponderance of the evidence is against such finding. The fourteenth finding of fact, as above set out, is also assailed by appellant upon the same grounds. We approve both these findings of fact, as well as all others made by the trial court, as being fully supported by the evidence reflected in this record, and overrule each of appellant's assignments and propositions questioning such findings.

[1] Appellant, by its first proposition, contends that the trial court erred in not rendering judgment for it for the full amount due upon the contracts for space in the local Houston cars up to the date of the judgment, because, as appellant contends, there was no duty resting upon appellant to re-rent the space in these cars contracted to Deutser, with a view to reducing damages that might flow from appellee's breach of the contracts. We do not agree with appellant's contention advanced by this proposition.

The undisputed evidence in this case shows that on July 2, 1920, appellee duly notified appellant by letter that it would not use any of the space contracted for in any of the street cars or interurban cars after August 1, 1920, and appellant was directed by the letter to re-rent such space in said cars or make such disposition of same as it might wish. Having been thus notified by appellee that it would no longer comply with its written contracts to use the space in any of the cars after August 1, 1920, it was appellant's duty to use reasonable efforts and diligence to ward off or minimize such threatened damages as might flow from appellee's breach of contract, and if appellant failed to use reasonable efforts and diligence to minimize such threatened damages; as was found by the trial court it did, it was not entitled to recover for any of such damages as it might have prevented by the use of such efforts and diligence. It seems to be the general rule in the American Union that one who is threatened with damages in consequence of a tort or breach of contract, with some few special exceptions, must use reasonable diligence and efforts to ward off or minimize such threatened damages. In 8 R. C. L. p. 442, the general rule is stated as follows:

"It is a fundamental rule that one who is injured in his person or property by the wrongful and negligent acts of another, whether as the result of a tort or of a breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize the resulting damage, and to the extent that his damages are the result of an active and unreasonable enhancement thereof, or are due to his failure to exercise such care and diligence, he cannot recover, or, as the rule is sometimes stated, he is bound to protect himself if he can do so with reasonable exertion or at trifling expense, and he can recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided."

The author cites in support of the text authorities from nearly all jurisdictions in the American Union, and among them the following Texas cases: Jones v. George, 61 Tex. 345, 48 Am. Rep. 280; Cooper v. Dallas, 83 Tex. 239, 18 S. W. 565, 29 Am. St. Rep. 645; Galveston, H. & S. A. Ry. Co. v. Zantzinger, 92 Tex. 365, 48 S. W. 563, 44 L. R. A. 53, 71 Am. St. Rep. 859. The author might have cited many other Texas authorities, all in point. But appellant contends that the general rule just stated has no application to the facts of this case, and to the nature of the contracts, the breach of which is made the basis of this suit. On the contrary, appellant's contention is that the rule which applies to a breach of contract between landlord and tenant is applicable in this case, and that the trial court was in error in applying the general rule. It appears from authorities cited in appellant's brief that in many of the jurisdictions of the American Union it is held that a landlord who has let his premises to a tenant for a specific term, and the tenant, after going into possession, abandons the same, the landlord rests under no duty to re-rent or relet the abandoned premises to another with a view to protecting himself against the consequences of the breach of the contract by the tenant, but may stand upon the contract, and at the end of the term sue the tenant and recover his damages to the extent of the contract price. Mr. Tiffany, in his work on Landlord & Tenant, at page 1170, declares the rule to be, as between landlord and tenant, as claimed by appellant, and the author says, in substance, that such rule, as between landlord and tenant, is supported by the overwhelming weight of authority in the American Union. We have not found it necessary to determine whether the weight of authority is in support of the rule announced by Mr. Tiffany as between landlord and tenant, but if it were necessary that we here determine the question, we would find ourselves in conflict with the holdings in several Texas cases, were we to determine to the contrary. It appears that the rule, as between landlord and tenant, stated by Mr. Tiffany, has been followed in Texas in the following cases: Racke v. Anheuser-Busch Brewing Co., 17 Tex. Civ. App. 167, 42 S. W. 774; Davidson v. Hirsch, 45 Tex. Civ. App. 631, 101 S. W. 269; Ogus, etc., & Co. v. Foley Bros. Dry Goods Co. (Tex. Civ. App.) 241 S. W. 267; Empire Gas & Fuel Co. v. Pendar (Tex. Civ. App.) 244 S. W. 184.

But we cannot agree with appellant's contention that the rule as between landlord

and tenant has any application to a breach of the contracts here under consideration. In our opinion, the appellant, in renting the street car space to appellee under the contracts in this case, was in no sense a landlord, and let no premises of any nature whatsoever, in contemplation of the landlord and tenant rule, to appellee, but only contracted to carry a card in the street cars for appellee for the purposes of advertising appellee's mercantile business in the city of Houston. The evidence shows that these advertising cards were not to be placed in any particular part of the car, and were changed around from place to place in the top of the car, as appellant might direct. The cards were not even to be placed by appellee, and it had no control whatever over the cards after giving them to the appellant to be placed in the cars. We see no similarity whatever between this kind of contract and that of landlord and tenant. We therefore hold that the general rule above stated was properly applied by the trial court to the breach of the contracts here under consideration, and overrule all of appellant's contentions to the contrary.

[2] Appellant next contends that the trial court erred in failing to find whether the appellant had any unsold space of its own in the local street cars, other than the space covered by the Deutser contracts. As to this contention, it will suffice to say that there was no request by appellant for any such specific finding of fact by the trial court. Therefore, if such finding of fact were necessary to support the judgment of the trial court, it is presumed that the trial court made such finding, in the absence of anything to the contrary, if the evidence in the record would authorize such finding. We have examined the record on this point, and have concluded that the evidence was amply sufficient to authorize such finding by the trial court, and we overrule all of appellant's contentions on this point.

[3] On the trial of the case, the appellee was permitted to prove by several witnesses that appellant could have re-rented or relet the Deutser space in the street cars to other advertisers in the city of Houston for as much or more than it was to receive under the Deutser contracts during all the period of time between the breach of the contract by Deutser and the trial of the case. The testimony of these several witnesses was objected to by appellant on the ground that the witnesses were not qualified to speak such facts, and proper bills of exception were saved in that connection. It is unnecessary that we determine whether these witnesses were qualified to speak on the point or not, because it is manifest, we think, from the testimony of appellant's manager, Mr. J. F. Smiley, as reflected by this record, that appellant could have re-rented or relet the Deutser space in the local cars for as much or more than it was to receive under the Deutser contracts during the entire period of time between the breach of the contract and the trial of the case. Mr. Smiley is the general manager for appellant throughout the state of Texas, and had been with appellant more than eleven years at the time of the trial, and it is clear to us from his evidence that there would have been no difficulty in re-renting or reletting the Deutser space in the local cars for the time in question, had he desired to do so.

[4] We notice in appellant's motion for new trial in this case it is suggested that the trial court did not fully comprehend but misunderstood Mr. Smiley's meaning in giving his evidence in this case, but we do not agree with this contention, but, on the contrary, think that the trial court placed the proper construction upon his evidence as a whole. We shall not go into detail in discussing Mr. Smiley's evidence, for the reason that no useful purpose would be served by doing so. If there was any error in admitting the testimony of the several witnesses that was objected to on this point, it was harmless error, because the necessary facts were proved by Mr. Smiley himself, and the trial being before the court, it is presumed that the trial judge considered only so much of the testimony as was proper to be considered.

There are other propositions advanced for reversal, but what we have said, in effect, disposes of them, and they are all overruled.

The judgment will be affirmed, as heretofore ordered.